IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GARY W. BARNES,                          §
                                         §
          Plaintiff,                     §
                                         §
                                         §
v.                                       §        CIVIL ACTION NO. H-07-4377
                                         §
MICHAEL J. ASTRUE,                       §
Commissioner of the                      §
Social Security Administration,          §
                                         §
          Defendant.                     §

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's motion for summary judgment (Docket Entry No. 15) and Defendant's motion for summary judgment (Docket Entry No. 13).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

### I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability insurance benefits under Title II

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 11 and 12.

of the Social Security Act ("the Act").[2]

## A.  Factual History

Plaintiff was born on July 4, 1943, and is now 65 years of age.[3]  He has a high school education and has taken some courses outside of high school, including income tax courses at H&R Block.[4] Plaintiff previously worked as a warehouse foreman, an industrial supplies salesperson, and a purchaser.[5]

In early September 2003, Plaintiff was admitted to the Houston Northwest Medical Center complaining of lower left leg pain and coolness in his leg.[6]   The consulting physician noted that Plaintiff had a history of atherosclerotic peripheral vascular disease and that, approximately fifteen years prior to the examination, he had had a femoral popliteal bypass.[7]   It was determined that Plaintiff had an "acute occlusion of the left femoral popliteal artery with severe claudication . . . ."[8] Plaintiff underwent surgery that required the placement of a catheter in the left femoral popliteal artery.[9]  Following surgery,

---

[2]     Plaintiff's Original Complaint, Docket Entry No. 1.

[3]     Transcript of the Administrative Proceedings ("Tr.") 52.

[4]     Tr. 377.

[5]     Tr. 56-63.

[6]     Tr. 137.

[7]     Id.

[8]     Tr. 135.

[9]     Id.

2

Plaintiff again had difficulties with his left leg and a second surgery was performed.[10]

During the same time frame as the above surgeries, a bilateral carotid ultrasound was performed on both the left and right sides of Plaintiff's neck.[11]  The ultrasound revealed that Plaintiff had mild plaque formation in his right neck artery and heavy plaque formation in the left neck artery.[12]  The interpreting doctor concluded that Plaintiff had "mild right-sided carotid artery disease and moderate left-sided carotid artery disease."[13]  On September 16, 2003, Plaintiff was discharged.[14]

Subsequently, Plaintiff again complained of pain in his left calf, and, on October 30, 2003, Plaintiff underwent an arterial doppler ultrasound of his lower extremities.[15]  The interpreting doctor found that Plaintiff suffered from "either occlusion or high grade stenosis in the region of the distal superficial femoral artery or proximal left popliteal artery."[16]  On December 3, 2003, Plaintiff underwent a third femoral-posterior tibial bypass and was

---

[10]    Tr. 113, 125-37.

[11]    Tr. 122.

[12]    Id.

[13]    Id.

[14]    Tr. 113.

[15]    Tr. 151.

[16]    Id.

discharged two days later.[17]

Plaintiff's medical records also generally support his claim of back pain and enlarged prostate.  Regarding Plaintiff's back pain, David Boyd, M.D., concluded, in an examination dated February 2, 2002, that Plaintiff had a "straightening of the cervical curvature, which may indicate muscle spasm/cervical strain" and "[d]egenerative changes throughout the cervical spine."[18]  As to Plaintiff's enlarged prostate, Stuart Zykorie, M.D., examined Plaintiff several times and concluded that, as of February 3, 2006, Plaintiff's Prostate-Specific Antigen ("PSA") level was stable and that he had a mildly enlarged prostate.[19]

In addition to medical records, Plaintiff's physicians, Stephen D. Fillman, M.D., ("Dr. Fillman") and Daniel G. Stroud, M.D., ("Dr. Stroud") completed physical residual functional capacity ("RFC") questionnaires ("RFC Questionnaire"), on March 26, 2004, and April 6, 2004, respectively.[20]

On his RFC Questionnaire, Dr. Fillman diagnosed Plaintiff with severe peripheral vascular disease.[21]  He noted that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the RFC Questionnaire, that

---

[17]    Tr. 154-56.

[18]    Tr. 108.

[19]    Tr. 316.

[20]    Tr. 305-12.

[21]    Tr. 305.

during the day Plaintiff's symptoms or pain frequently would interfere with his attention and concentration, and that Plaintiff was incapable of performing even low stress jobs.[22]

Dr. Fillman determined that Plaintiff: (1) could sit for two hours at a time and sit for a total of four hours in an eight-hour workday; (2) could stand for fifteen minutes at a time before needing to sit down and stand or walk for a total of less than two hours in an eight-hour workday; (3) would need to walk for five minutes every thirty minutes during an eight-hour workday; (4) would need to take unscheduled fifteen-minute breaks every thirty minutes; and (5) would need to keep his legs elevated above the waist for fours hours during an eight-hour workday.[23]

Dr. Fillman also reported that Plaintiff was limited to lifting less than ten pounds rarely and never lifting ten pounds or more.[24]  The RFC Questionnaire noted that Plaintiff could frequently look up and down, turn his head, hold his head in a static position, occasionally twist, and never stoop, crouch/squat, climb ladders and stairs.[25]  Dr. Fillman noted that Plaintiff had no significant limitations in reaching, handling, or fingering.[26]

---

[22]    Tr. 306.

[23]    Tr. 305-07.

[24]    Tr. 307.

[25]    Tr. 307-08.

[26]    Tr. 308.

Lastly, he reported that Plaintiff would likely be absent from work more than four days per month.[27]

Dr. Stroud's answers on the RFC Questionnaire were similar to Dr. Fillman's.  Dr. Stroud found that Plaintiff had peripheral vascular disease, that his impairments were reasonably consistent with the symptoms and functional limitations described in the questionnaire, and that Plaintiff was incapable of even low stress jobs.[28]

Dr. Stroud determined that Plaintiff: (1) could sit for one hour at a time and sit for a total of two hours in an eight-hour workday; (2) could stand for ten minutes at a time and stand or walk for less than two hours in an eight-hour day; (3) would need to walk for four minutes every hour during an eight-hour work day; (4) would need to take fifteen to twenty minute breaks every forty-five minutes to an hour; and (5) would need to keeps his legs elevated at hip height for four and one-half to five hours during the day.[29]

Dr. Stroud also noted that Plaintiff could occasionally lift less than ten pounds but never ten pounds or more.[30]  He further determined that Plaintiff could frequently look down and up,

---

[27]   Id.

[28]   Tr. 309-10.

[29]   Tr. 310-11.

[30]   Tr. 311.

occasionally turn his head right or left, and occasionally hold his head in a static position.[31]   Dr. Stroud found that Plaintiff was limited to rarely twisting and that he could never stoop, crouch/squat, climb stairs, or climb ladders.[32]   Lastly, Dr. Stroud noted that Plaintiff had no significant limitations in his reaching, handling, or fingering.   Like Dr. Fillman, Dr. Stroud believed that Plaintiff would likely miss more than four days of work per month.[33]

## B.   Procedural History

Plaintiff filed for disability benefits on October 31, 2003, claiming an inability to work since September 2, 2003, due to vascular and circulatory problems and atherosclerosis.[34]   The Commissioner denied Plaintiff's application at the initial and reconsideration levels.[35]   Thereafter, Plaintiff requested an evidentiary hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[36]   The ALJ granted Plaintiff's request and conducted a hearing in Nacogdoches, Texas on January 25, 2007.[37]

---

[31]   Id.

[32]   Tr. 312.

[33]   Id.

[34]   Tr. 52, 74.

[35]   Tr. 33-34.

[36]   Tr. 46.

[37]   Tr. 373-95.

7

During the hearing, the ALJ solicited testimony from Plaintiff, who was represented by an attorney, and Russell Bowden, a vocational expert ("VE").[38]

Plaintiff testified that he suffers from pain and circulatory problems in his legs, a missing right index finger on his dominant hand, prostate problems, and more than ninety-percent deafness in his left ear.[39]  Plaintiff also averred that he is pre-diabetic.[40]

Plaintiff stated that in 2003 he left his most recent employment because of a blood clot in his left leg.[41]  Over the course of time, Plaintiff has had four different surgeries on his left leg.[42]  According to Plaintiff, he continues to have pain in his left leg, a result of limited blood flow into the leg.[43]

Because of the pain in his legs, Plaintiff averred that he must elevate his legs while sitting and that he has difficulty climbing stairs and bending at the waist.[44]  In addition, Plaintiff claimed that he had to "peck" to type because of the missing right index finger.[45]

---

[38]    Tr. 373.

[39]    Tr. 378-88.

[40]    Tr. 385.

[41]    Tr. 378.

[42]    Id.

[43]    Tr. 378-79.

[44]    Tr. 381.

[45]    Tr. 380.

Plaintiff testified that despite the above-stated conditions, he was still capable of standing without pain for twenty to twenty-five minutes, walking twenty-five to thirty-five feet without pain, sitting forty-five minutes without pain, and that he could lift twenty pounds without pain.[46]  This was significantly better than the limitations reported by Drs. Fillman and Stroud in their RFC Questionnaires.

Plaintiff also testified about his daily activities.[47]  At the time of the hearing, Plaintiff stated that he baby-sat his grandchildren and drove them to school and other activities.[48] Plaintiff occasionally went grocery shopping with his wife, sat down when he needed a break and leaned on the cart for support.[49] Plaintiff reported that he worked in his yard occasionally, explaining that he had a small yard, worked slowly, and only mowed a few strips of grass before resting.[50]  He testified that he would work for twenty-five to thirty minutes and then take a fifteen-minute break.[51]

Although no medical expert ("ME") testified at the hearing, the ALJ had a Physical RFC Assessment completed by Robert N.

---

[46]     Tr. 378-79.

[47]     Tr. 382-84.

[48]     Tr. 382.

[49]     Id.

[50]     Tr. 382-83.

[51]     Tr. 383.

9

Barnes, M.D., ("Dr. Barnes"), a state agency physician.[52]  On the RFC assessment signed March 2, 2004, Dr. Barnes wrote that Plaintiff's "symptoms with alleged limitations are partially credible but not totally disabling."[53]

Dr. Barnes found that Plaintiff was limited to lifting and/or carrying not more than twenty pounds occasionally and ten pounds frequently, that he could stand and/or walk less than two hours in an eight-hour workday,[54] that he could sit with normal breaks for a total of about six hours in an eight-hour workday, and, other than the limitations stated for lifting and carrying, he could push and/or pull without limitation.[55]

As to Plaintiff's postural limitations, Dr. Barnes found that Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; however, Plaintiff could not climb ladders, ropes, or scaffolds.[56]  Dr. Barnes' evaluation also specified that Plaintiff had no manipulative, visual, or

---

[52]    Tr. 198-205.

[53]    Tr. 203.

[54]    On the Physical RFC Assessment form, Dr. Barnes appears to check both that Plaintiff can stand and/or walk less than two hours in an eight-hour day and that Plaintiff can stand and/or walk at least two hours in an eight-hour work day.  Tr. 199.  This is not, however, problematic because in the ALJ's hypothetical to the VE the ALJ states that Plaintiff is limited to standing and walking two hours out of eight in a workday, which is the more restrictive alternative of the two.  Tr. 390.

[55]    Tr. 199.

[56]    Tr. 200.

communicative limitations.[57]  He also indicated that Plaintiff should avoid concentrated exposure to extreme cold and all exposure to heights.[58] Dr. Barnes then specified that Plaintiff had no other environmental limitations.[59]

After reviewing the file and listening to the testimony, the VE testified.[60]  The VE opined that Plaintiff's most recent relevant work was as a warehouse foreman and represented skilled, heavy work.[61]  Because of the heavy work load it was determined that Plaintiff could not return to this type of work.[62]  Plaintiff's other relevant work was his job as an industrial supplies salesperson.[63]  This position was classified as semi-skilled and sedentary.[64]

Adopting Dr. Barnes' RFC limitations, the ALJ asked the VE to assume that Plaintiff was limited to: (1) lifting twenty pounds occasionally and ten pounds frequently; (2) walking and standing two hours in an eight hour day; (3) sitting six hours in an eight hour day; (4) pushing and pulling with consistent strength; (5) no

---

[57]    Tr. 201-02.

[58]    Tr. 202.

[59]    Id.

[60]    Tr. 389-95.

[61]    Tr. 389-90.

[62]    Id.

[63]    Tr. 390.

[64]    Id.

climbing ramps, stairs, ladders, ropes, and scaffolds; (6) occasional other postural activities; and (7) avoiding heights, hazards, and concentrated exposure to extreme cold.[65]   Presented with these limitations, the VE testified that Plaintiff would be able to perform his past relevant work as an industrial supplies salesperson, but not as a warehouse foreman.[66]   The VE explained that "the sales position, which was sedentary and semi-skilled, would meet [Plaintiff's] RFC . . . ."[67]

Even if Plaintiff's abilities were further reduced to a completely sedentary level with lifting ten pounds or less occasionally and/or frequently, and adding sit/stand limitations to the hypothetical, Plaintiff would still be able to perform his past relevant work as an industrial supplies salesperson because that position was performed primarily over the phone and provided reasonable opportunities to alternate sitting and standing during the day.[68]

The VE testified that a person who could only work four to six hours in an eight day was not able to obtain competitive employment because a person must be able to sit, stand and walk for eight hours in order to be competitively employed.[69]

---

[65]   Id.

[66]   Tr. 390-91.

[67]   Tr. 390.

[68]   Tr. 391.

[69]   Tr. 391-92.

In response to questions posed by Plaintiff's attorney, the VE testified that Plaintiff's limited bilateral manual dexterity and the need to have his feet elevated during the day would not affect his ability to perform his past job as an industrial supplies salesperson.[70]   The VE noted that Plaintiff could still use a computer despite his limited typing ability and that having his feet elevated was a reasonable accommodation.[71]

The VE denied that there was any need for a vocational adjustment in light of the fact that Plaintiff last performed his job as a industrial supplies salesperson in 1992.[72]   The VE explained that Plaintiff's past relevant work as an industrial supplies salesperson was within the fifteen-year consideration period and that the rationale for limiting consideration to work performed within the past fifteen years was to ensure its relevancy to the present job market.[73]

On March 7, 2007, the ALJ issued his decision finding that Plaintiff met the insured status requirements and had not engaged in substantial gainful activity since September 1, 2003.[74]   The ALJ found that Plaintiff had peripheral vascular disease and carotid

---

[70]     Tr. 393.

[71]     Tr. 392-393.

[72]     Tr. 393-94.

[73]     Tr. 394.

[74]     Tr. 23.

13

vascular disease that were severe.[75]   In addition, the ALJ noted that claimant had a bad back and a mildly enlarged prostate; however, because of the minimal impact caused by these impairments on his ability to perform work-related functions, the ALJ found that those conditions were not "severe" in nature.[76]   The ALJ next determined that the peripheral vascular disease and carotid vascular disease did not meet or equal any of the Listings and that Plaintiff's testimony regarding his impairments was not completely credible.[77]   Plaintiff retained an RFC, according to the ALJ, to perform sedentary work.[78]

The ALJ found that Plaintiff's position as an industrial supplies salesperson was semi-skilled sedentary work, and the ALJ determined that "[t]he claimant is capable of performing past relevant work as a salesperson for industrial supplies."[79]

On October 26, 2007, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's decision the final decision of the Commissioner.[80]

## II. Standard of Review and Applicable Law

---

[75]   Id.

[76]   Tr. 24.

[77]   Tr. 24, 26.  "The Listings" refers to impairments listed in Appendix 1 of the SSA regulations.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

[78]   Tr. 27.

[79]   Id.

[80]   Tr. 4-6.

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision; and 2) the ALJ applied proper legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

## A. Substantial Evidence

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." Id. The Commissioner has the responsibility of resolving any conflict in the evidence. Id. If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1998). In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown, 192 F.3d at 496. In other words,

the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.  Id.

## B.  Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).  Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of

16

performing work that he has done in the past must be
found "not disabled;" and (5) if the claimant is unable
to perform his previous work as a result of his
impairment, then factors such as his age, education, past
work experience, and [RFC] must be considered to
determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20
C.F.R. § 404.1520.  By judicial practice, the claimant bears the
burden of proof on the first four of the above steps, while the
Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d
194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  If the
Commissioner satisfies his step-five burden of proof, the burden
shifts back to the claimant to prove she cannot perform the work
suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).
The analysis stops at any point in the process upon a finding that
the claimant is disabled or not disabled.  Greenspan, 38 F.3d at
236.

### III. Analysis

**A.   Plaintiff's Motion for Summary Judgment**

Plaintiff requests judicial review of the ALJ's decision to
deny disability benefits.[81]  He contends that the decision is not
supported by substantial evidence and that the ALJ did not follow
proper legal procedures.[82]  This court finds that Plaintiff's
arguments are best organized as follows.  Plaintiff argues that:
(1) the ALJ erred in considering the Listings; (2) that the ALJ

---

[81]   Plaintiff's Original Complaint, Docket Entry No. 1.

[82]   Id. at p. 2.

erred in regards to the ME; (3) that the ALJ erred in the weight given to the opinions of the treating physicians; (4) the ALJ erred in failing to consider evidence favorable to Plaintiff's disability claim; (5) the ALJ erred in not considering Plaintiff's additional impairments; (6) the ALJ erred in considering Plaintiff's past relevant work experience; and (7) the ALJ erred in failing to find Plaintiff disabled based on the medical-vocational guidelines (the "Guidelines").[83]

### 1.   The Listings

Plaintiff argues that ALJ erred in finding at step three of the sequential evaluation process that his impairments did not meet or equal any of the Listings.[84]  Specifically, Plaintiff argues that the medical evidence of record demonstrates that his peripherical vascular disease and carotid vascular disease meet the criteria for Listings 4.11 or 4.12.[85]  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 4.11-12.

To obtain a disability determination under the Listings an applicant must show that his impairments meet or equal one of the Listings in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  At step three, the claimant bears the burden to prove that his impairment or combination of impairments meets or equals a Listing.  20 C.F.R. §

---

[83]    Plaintiff's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 15, pp. 5-15 (unnumbered).

[84]    Id. at pp. 14-15 (unnumbered).

[85]    Id.

18

404.1520(d); <u>Crowley</u>, 197 F.3d at 198.  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).  The ALJ is responsible for making the determination as to whether a severe impairment meets or equals a Listing.  Soc. Sec. Ruling 96-6P, 1996 WL 374180 at 3-4.

Listing 4.11 directs a presumptive finding of disabled if Plaintiff's impairment qualifies as follows:

> Chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:
>
> A.   Extensive brawny edema (see 4.00G6) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip.
>
> OR
>
> B.   Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. pt. 404, subpt. P, App. 1, § 4.11.

Similarly, Listing 4.12 directs a presumptive finding of disabled if Plaintiff's impairment qualifies as follows:

> Peripheral arterial disease, as determined by appropriate medically acceptable imaging (see 4.00A3d, 4.00G2, 4.00G5, and 4.00G6), causing intermittent claudication (see 4.00G1) and one of the following:

A.    Resting ankle/brachial systolic blood pressure ratio
of less than 0.50.

OR

B.    Decrease in systolic blood pressure at the ankle on
exercise (see 4.00G7a and 4.00C16-4.00C17) of 50 percent
or more of the pre-exercise level and requiring 10
minutes or more to return ro pre-exercise level.

OR

C.    Resting toe systolic pressure of less than 30 mm Hg
(see 4.00G7c and 4.00G8).

OR

D.    Resting toe/brachial systolic blood pressure ratio
of less than 0.40 (see 4.00G7c).

20 C.F.R. pt. 404, subpt. P, App. 1, § 4.12.

Listings 4.11 and 4.12 are met when a claimant's impairment
meets the diagnostic description in the introductory paragraphs and
one of the criteria that follow.  In order to meet either the 4.11
or 4.12 Listing, evidence must demonstrate that Plaintiff's
impairments "meet all of the specified medical criteria."
Sullivan, 493 U.S. at 530.

The evidence to be considered by the ALJ included an RFC
assessment completed by Dr. Barnes and a Disability Determination
and Transmittal form signed by Jimmy L. Breazeale, M.D., ("Dr.
Breazeale").[86]  Neither Dr. Barnes nor Dr. Breazeale identified any
impairment or combination of impairments that met or equaled a
Listing.  The ALJ found that "[n]one of [Plaintiff's] treating or

_____

[86]    Tr. 34, 198-205.

examining physicians has identified any impairment or combination of impairment that met or equaled a listed impairment."[87]   In addition, the court is unable to find any evidence in the record that Plaintiff's impairments meet all the requirements of either Listing 4.11 or 4.12, and Plaintiff has not argued in his brief how his impairments or combination of impairments specifically meet the criteria of the Listings.

Based on the above, there is substantial evidence to support the ALJ's determination that Plaintiff's impairments or combination of impairments do not meet or equal a listed impairment.

## 2.   Lack of Medical Expert

Although Plaintiff's arguments on this point are less than clear, he appears to argue that the ALJ's failure to call a medical expert at the hearing and the ALJ's failure to obtain an updated medical opinion on the issue of medical equivalency violated Social Security Ruling ("SSR") 96-6P and the ALJ's duty to fully and fairly develop the record.[88]

SSR 96-6P explains the circumstances when an ALJ must obtain an updated, or second, medical expert opinion on the medical equivalence to the Listings.   See Soc. Sec. Ruling 96-6P, 1996 WL

---

[87]      Tr. 24.

[88]      Plaintiff's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 15, pp. 5-15 (unnumbered). Plaintiff also argues that the ALJ erred in failing to consult an ME regarding Plaintiff's RFC. Id. at pp. 9-10 (unnumbered). Plaintiff's argument is without merit.  As noted above, there is an RFC completed by Dr. Barnes that the ALJ discusses in detail in his opinion.  Tr. 27.

374180.  SSR 96-6P first notes that "[t]he signature of a State
agency medical . . . consultant on a . . . Disability Determination
and Transmittal Form . . . ensures that consideration by a
physician . . . designated by the Commissioner has been given to
the question of medical equivalence at the initial and
reconsideration levels of administrative review." <u>Id.</u> at 3.  SSR
96-6P requires that "[a]n updated medical expert opinion must be
obtained by the administrative law judge or the Appeals Council
before a decision of disability based on medical equivalence can be
made." <u>Id.</u> at 1.  The ruling, however, limits that requirement
with further detail:

> When an [ALJ] . . . finds that an individual's
> impairment(s) is not equivalent in severity to any
> [L]isting, the requirement to receive expert opinion
> evidence into the record may be satisfied by any of the
> foregoing documents [Disability Determination and
> Transmittal form, and Cessation or Continuance of
> Disability or Blindness form] signed by a state agency
> psychological or medical consultant.  However, an [ALJ]
> . . . must obtain an updated medical opinion from a
> medical expert in the following circumstances:
>
>  * When no additional medical evidence is received, but
> in the opinion of the [ALJ] . . . the symptoms, signs,
> and laboratory findings reported in the case record
> suggest that a judgment of equivalence may be
> reasonable; or
>
>  * When additional medical evidence is received that in
> the opinion of the [ALJ] . . .may change the State
> agency medical or psychological consultant's finding
> that the impairment(s) is not equivalent in severity to
> any impairment in the Listing of impairments.

<u>Id.</u> at 3-4.  In other words, SSR 96-6P specifies that the ALJ must
obtain updated expert testimony only if, *in his opinion*, "the case

record suggest that a judgment of equivalence may be reasonable" or the new evidence might change the finding of the state medical consultant.  Id.  Therefore, the ALJ's decision not to obtain an updated medical opinion from a medical expert in all other cases is discretionary.

The evidence before the ALJ included an RFC completed by Dr. Barnes and a Disability Determination and Transmittal form completed by Dr. Breazeale.  As noted above, the Disability Determination and Transmittal form "ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."  Id. at 3. Based on these documents, there is substantial evidence to support the ALJ's decision not to obtain an updated medical opinion regarding the medical equivalency of Plaintiff's combined impairments.

The question of whether the ALJ fully and fairly developed the record depends on whether there was sufficient evidence in the record for an informed decision.  See Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996).  As long as sufficient evidence does exist, the ALJ has no duty to request additional evidence.  See 20 C.F.R. §§ 404.1516; Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989). Reversal of the ALJ's decision is appropriate only if Plaintiff can show prejudice from the ALJ's failure to request additional

evidence.  Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  Id.

As noted above, there was sufficient evidence in the record for the ALJ to make an informed decision based on Dr. Barnes' RFC assessment and the Disability Determination and Transmittal form completed by Dr. Breazeale.  In addition, Plaintiff failed to show that he was prejudiced by the ALJ's decision not to request additional evidence.  Plaintiff's arguments on these points do not require reversal or remand of the ALJ's decision.

### 3.  Weight Accorded to Treating Physicians' Opinions

Plaintiff complains that the ALJ failed to give his treating physicians' opinions controlling weight.[89]  In addition, Plaintiff argues the ALJ erred in failing to complete the required analysis before rejecting the views of the treating physicians.[90] Specifically, Plaintiff complains that the ALJ rejected Drs. Fillman and Stroud's conclusions in the RFC Questionnaires

---

[89]   Plaintiff's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 15, pp. 5-15 (unnumbered).

[90]   Plaintiff also argues that "[t]he ALJ erred in failing to direct the Plaintiff to obtain a more detailed report from the treating physician, when the ALJ found the treating physician's opinion to be insufficiently supported by treating notes." Id. at p. 7 (unnumbered).  Plaintiff neither cites to, nor is the court able to find, any evidence to suggest that "the ALJ found the treating physician's opinion to be insufficiently supported by treating notes."  The ALJ's decision discusses the opinions of both Drs. Fillman and Stroud in detail. Therefore, Plaintiff's argument is without merit.

completed by each doctor.[91]

Drs. Fillman and Stroud's answers on Plaintiff's RFC Questionnaires were similar; both found Plaintiff's abilities more limited than Dr. Barnes' RFC assessment. Drs. Fillman and Stroud concluded that Plaintiff was incapable of performing even low stress jobs.[92] They found that Plaintiff was limited in his ability to walk, stand, lift, carry, climb, and sit.[93] In addition, both doctors noted that Plaintiff would need keep his legs elevated during a significant portion of the work day, take frequent breaks, and was likely to miss more than four days a month of work.[94] In addition, Dr. Stroud concluded in a separate letter that Plaintiff was disabled.[95]

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." Newton, 209 F.3d at 455. (internal quotation marks omitted). Even though the opinion and diagnosis of a treating physician should be afforded considerable weight, "the ALJ has sole responsibility for determining a claimant's disability

---

[91]    Id. at pp. 5-8 (unnumbered).

[92]    Tr. 306, 310.

[93]    Tr. 305-12.

[94]    Id.

[95]    Tr. 160, 168.

status." <u>Martinez v. Chater</u>, 64 F.3d 172, 176 (5th Cir. 1995)
(quoting <u>Moore v. Sullivan</u>, 919 F.2d 901, 905 (5th Cir. 1990)).

The ALJ ultimately may give less weight to the medical opinion
of any physician when his statements are conclusory, unsupported,
or otherwise incredible. <u>Greenspan</u>, 38 F.3d at 237. However,
"absent reliable medical evidence from a treating or examining
physician controverting the claimant's treating specialist, an ALJ
may reject the opinion of the treating physician only if the ALJ
performs a detailed analysis of the treating physician's views
under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."
<u>Newton</u>, 209 F.3d at 453.

In his decision, the ALJ discusses in detail Drs. Fillman and
Stroud's medical opinions.[96]   The ALJ found that despite the
limitations noted in the Questionnaires, neither doctor documented
similar restrictions in their treatment notes.[97] The ALJ considered
Plaintiff's own admissions concerning his physical limitations,
which were less restrictive than his treating physicians' views of
the same.[98] Based on the above, the ALJ found the limitations set
out by Drs. Fillman and Stroud "to be unsupported by the medical
evidence and inconsistent with the record."[99]

---

[96]     Tr. 26.

[97]     <u>Id.</u>

[98]     Tr. 25-26.

[99]     Tr. 26.

In the present case, the ALJ fully considered the information provided by Dr. Fillman, Dr. Stroud, and others, and adequately explained his rationale for not giving controlling weight to the opinions of the treating physicians.  As it is the role of the ALJ to resolve evidentiary conflicts, the court will not substitute its judgment for the ALJ when the decision is supported by substantial evidence and is founded in sound legal standards.  See Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).  In addition, the determination of any *legal* conclusions (such as the ability to work) are reserved to the Commissioner.  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. §§ 404.1527(e)(1),(3), 416.927.  Therefore, Drs. Fillman and Stroud's opinions that Plaintiff was incapable of even low stress jobs are legal conclusions and are not entitled to deference by the Commissioner.

In addition, Plaintiff's contention that Newton required the ALJ to analyze Drs. Fillman and Stroud's assessment pursuant to 20 C.F.R. § 404.1527(d)(2) is incorrect.  Newton's analysis is designed for cases in which the ALJ "summarily reject[s] the opinions of [a] treating physician, based only on the testimony of a non-specialty medical expert who has not examined the claimant."  Newton, 209 F.3d at 458.  As noted above, the ALJ fully considered the information provided by Drs. Fillman and Stroud and adequately explained his rationale for the weight given to the opinions.

Therefore, Plaintiff's arguments are without merit.

27

### 4.   Failure to discuss evidence supporting Plaintiff's claim

Plaintiff claims that the ALJ failed to acknowledge certain evidence favorable to his claim of disability in his opinion and that the favorable evidence supports a finding that he was disabled.[100]

The court's review of the record is limited to determining whether there is substantial evidence in the record to support the decision of the ALJ, and the Commissioner has the responsibility of resolving any conflict in the evidence.  <u>Carey</u>, 230 F.3d at 135.  If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.  42 U.S.C. § 405(g); <u>Selders</u>, 914 F.2d at 617.  As long as the ALJ supports his decision with substantial evidence, an ALJ's failure to mention every notation in the medical record does not equate with a failure to consider the evidence. See <u>Audler v. Astrue</u>, 501 F.3d 446, 448 (5th Cir. 2007)(discussing that the ALJ is required to discuss evidence in support of a claim but not required to perform "an exhaustive point-by-point discussion").

In the case before this court, the ALJ cited more than enough evidence to support his finding of no disability.  The ALJ discusses the evidence in great detail, including the records from

---

[100]    Plaintiff's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 15, pp. 5-15 (unnumbered).

Drs. Fillman and Stroud.[101]  The issue is not how much evidence supports a finding of disability, but, rather, whether substantial evidence supports the ALJ's finding that Plaintiff was not disabled.  See Brown, 192 F.3d at 496.  The court finds more than a scintilla of evidence to support the ALJ's conclusion that Plaintiff was not disabled.

### 5.  Additional Impairments

Plaintiff argues that the ALJ erred because he failed to consider and failed to find the additional impairments proffered by Plaintiff to be severe.[102]  The additional impairments offered by Plaintiff are diabetes, a ruptured left eardrum, and an amputation of the right-hand index finger.[103]

At step two of the sequential analysis the severity of an impairment or impairments is considered.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003) (citing 20 C.F.R. § 404.1520(c)).  In order to be found disabled, a claimant must show that he has a severe impairment.  Id.  A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  Id.

In this case, the ALJ considered all the additional

_____

[101]    Tr. 26.

[102]    Plaintiff's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 15, pp. 5-15 (unnumbered).

[103]    Id. at pp. 11-12 (unnumbered).

impairments proffered by Plaintiff, and there is substantial evidence to support the ALJ's determination that the additional impairments were not severe.  Specifically, the ALJ asked Plaintiff what difficulties he experienced due to his amputated finger and Plaintiff responded that "[he] can't bend it all the way . . . [and] that [he] can't do computers or type, . . . [he] [does] it by pecking."[104]  In regards to the left eardrum, Plaintiff opined that his eardrum was actually perforated, not ruptured, and that he has "had it [his] whole life."[105]  Lastly, the ALJ questioned Plaintiff about his diabetes.[106]  Plaintiff responded that he was only pre-diabetic and that at this point the condition was being monitored.[107]

Plaintiff's testimony revealed that the additional impairments had only minimal impact on his daily life.  The ALJ considered Plaintiff's additional impairments, and based on the above testimony, there is substantial evidence in the record to support the ALJ's determination that Plaintiff's perforated eardrum, amputated finger, and pre-diabetic condition were not severe.

**6.   Past Relevant Work**

Plaintiff argues that the ALJ erred in considering the

---

[104]    Tr. 380

[105]    Tr. 383-84.

[106]    Tr. 384.

[107]    Tr. 385.

industrial supplies sales position as part of his past relevant work experience because he last worked as an industrial supplies sales representative in 1992 and a return to that type of work would represent a significant vocational adjustment.[108]  Plaintiff also argues that the ALJ erred because he made no specific findings regarding the demands of the sales position as required by SSR 82-62.[109]

At the fourth step of the ALJ's analysis, the ALJ must determine whether the claimant is capable of performing past relevant work.  Barnhart v. Thomas, 540 U.S. at 25.  A claimant who is capable of performing past relevant work is not disabled. Bowling, 36 F.3d at 435.  At step four of the analysis the claimant bears the burden to prove he cannot perform his past relevant work. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

Work experience is relevant when "it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity."  20 C.F.R. § 404.1565(a).  Fifteen years was chosen because "[a] gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then [would] continue to apply [today]."  Id.  Pursuant to SSR 82-62 "work performed prior to the 15-year period may be considered as relevant when a continuity of

---

[108]    Plaintiff's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 15, pp. 12-15 (unnumbered).

[109]    Id.

skills, knowledge, and processes can be established between such work and the individual's more recent occupations." Soc. Sec. Ruling 82-62, 1982 WL 31386, at 2. The fifteen-year period is "the 15 years prior to the time of adjudication at the initial, reconsideration, or higher appellate level." Id.

In considering the industrial supplies sales position as part of the Plaintiff's past relevant work, the ALJ did not err. Plaintiff last worked as an industrial supplies salesperson in 1992.[110] Plaintiff's application for disability benefits was denied at the initial level on March 5, 2004, at the reconsideration level on May 5, 2004, and by the ALJ on March 7, 2007.[111] Plaintiff's employment occurred during the applicable fifteen-year time period, and, therefore, the ALJ did not err in considering Plaintiff's employment as an industrial supplies salesperson as part of his past relevant work experience.

As to Plaintiff's second argument, SSR 82-62 requires that the ALJ's rationale for a disability determination "be written so that a clear picture of the case can be obtained." Id. at 4. If the ALJ finds that a claimant:

> has the capacity to perform a past relevant job, the determination or decision must contain . . . the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.

---

[110]   Tr. 56.

[111]   Tr. 21, 33, 34.

      2.   A finding of fact as to the physical and mental demands of the past job/occupation.

      3.   A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Id. Plaintiff's argument that the ALJ failed to make specific findings regarding the physical and mental demands of Plaintiff's past relevant work as required by SSR 82-62 is unpersuasive.  The ALJ found that Plaintiff had the RFC:

> to lift up to 10 pounds occasionally and lift and/or carry items weighing less than 10 pounds frequently, sit about six hours in an eight-hour workday, and stand and/or walk no more than two hours in an eight-hour workday with unlimited pushing and/or pulling other than as shown for lifting and/or carrying with no climbing of ramps/stairs/ladders/ropes/scaffolds, the necessity to avoid concentrated exposure to extreme cold and avoid all exposure to hazards (machinery, heights, etc.), the necessity for a sit/stand option, and the necessity to elevate his while sitting.[112]

The ALJ found that Plaintiff's position as an industrial supplies salesperson was semi-skilled, sedentary work.[113]  In that capacity, the VE testified, Plaintiff answered the phone, quoted prices, took orders, and prepared sales records.[114]  In addition, the ALJ found that the vocational testimony did not conflict with the Dictionary of Occupational Titles.[115]

The ALJ did not err in considering the industrial supplies

---

[112]    Tr. 24.

[113]    Tr. 27.

[114]    Tr. 390.

[115]    Tr. 27.

sales position as part of Plaintiff's past relevant work and concluding that Plaintiff could return to that position. In addition, the ALJ made the findings required by SSR 82-62. Therefore, Plaintiff's arguments are without merit.

### 7. Guidelines

Plaintiff argues that the ALJ erred by not finding Plaintiff disabled under rule 201.00(h), 201.06, and 201.00(f).[116] 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00(h), 201.06, 201.00(f). As noted above, the ALJ found that Plaintiff could perform his past relevant work as a industrial supplies salesperson at step-four of the analysis. Therefore, the ALJ's inquiry never reached step five and the ALJ was not required to consider the Guidelines to determine Plaintiff's disability status. Plaintiff's argument is without merit.

### B. Defendant's Motion for Summary Judgment

Defendant asserts that the ALJ's decision should be affirmed because he properly determined Plaintiff was not disabled.[117] Specifically, Defendant argues that substantial evidence exists and the proper legal standards were used to determine that Plaintiff was not disabled because he was capable of performing his past relevant work as an industrial supplies salesperson.[118]

---

[116]   Plaintiff's Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 15, pp. 5-15 (unnumbered).

[117]   Defendant's Motion for Summary Judgment, Docket Entry No. 13.

[118]   <u>Id.</u>

The court recognizes the seriousness of Plaintiff's medical condition; however, the record must be reviewed with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla of evidence.  See Carey, 230 F.3d at 135.

As the court finds more than a scintilla of evidence in support of the determination, it cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.

Because the court finds that more than a scintilla of evidence exists in support of the ALJ's decision and that the ALJ committed no legal error, that decision cannot be overturned.  Therefore, Defendant's motion for summary judgment is granted.

### IV. Conclusion

Based on the foregoing, Defendant's motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

**SIGNED** at Houston, Texas, this 22nd day of December, 2008.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE